1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| WASHINGTON ELECTION INTEGRITY COALITION UNITED et al., | CASE NO. 2:21-cv-01354-LK |
| Plaintiffs, | ORDER DENYING MOTION TO REMAND, GRANTING MOTION TO DISMISS, DENYING MOTION FOR SUMMARY JUDGMENT, DISMISSING WEICU'S PRA CLAIM, AND DENYING MOTION TO INTERVENE |
| v. | |
| GARTH FELL et al., | |
| Defendants. | |

This matter comes before the Court on Washington Election Integrity Coalition United's ("WEICU's") motion to remand and two motions filed by Snohomish County and Snohomish County Auditor Garth Fell ("Defendants"). Dkt. Nos. 16, 19, 26. Defendants move to dismiss the individual Plaintiffs' claims under Federal Rule of Civil Procedure 12(b), Dkt. No. 16, and move for summary judgment on WEICU's claim under Federal Rule of Civil Procedure 56, Dkt. No. 26. Because the individual Plaintiffs lack Article III standing and the Court has no supplemental jurisdiction over the remaining state law claims, and because remand to state court would be futile, the Court dismisses the case.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

## I.    BACKGROUND

This action is one of several nearly identical actions originally filed in state court by WEICU and numerous pro se plaintiffs in counties across Washington, and one of six such actions that have been removed to this Court.[1] Plaintiffs filed their complaint in Snohomish County Superior Court on September 16, 2021. Dkt. No. 1-2 at 2. Their claims center on the conduct of the November 2020 general election in Snohomish County, Washington.

The individual Plaintiffs[2] bring claims against the Snohomish County Auditor for (1) using an uncertified voting system; (2) allowing or facilitating fraudulent alterations of the voting results (which Plaintiffs describe as "vote flipping, additions, and/or deletions"); (3) maintaining records of County elector party preference and identifying County electors' ballots by party preference; and (4) violating the United States Constitution and the Washington State Constitution. Dkt. No. 1-2 at 5–11, 13–16. For each of these alleged "wrongful acts," the individual Plaintiffs seek declaratory and injunctive relief. *Id.* They also seek damages against the Auditor for civil rights violations under 42 U.S.C. §§ 1983 and 1988. *Id.* at 16. WEICU's sole claim is against the Auditor and Snohomish County under Washington's Public Records Act ("PRA"), Wash. Rev. Code §§ 42.56.001–42.56.900, for wrongfully denying WEICU's records request for "original ballots, ballot images, spoiled ballots, adjudication records, ballot envelopes, and returned ballots for the Election." Dkt. No. 1-2 at 11. WEICU seeks to "compel Defendants to provide access to public

---

[1] The five other removed actions are *Washington Election Integrity Coalition United v. Anderson*, No. C21-5726-LK; *Washington Election Integrity Coalition United v. Kimsey*, No. C21-5746-LK; *Washington Election Integrity Coalition United v. Wise*, No. C21-1394-LK; *Washington Election Integrity Coalition United v. Bradrick*, No. C21-1386-LK; and *Washington Election Integrity Coalition United v. Hall*, No. C21-5787-LK.

[2] The individual Plaintiffs are Arthur Coday, Jr., Thomas J. Prettyman, Diane DeJong, Rita Beitz, Diana Barker, Roy Fuller, Mary Lou Burns, Bob Kaldor, Jane Maclin, James Maclin, Randy Tendering, John Beitz, Melissa Eller, Susan Mischel, Lisa Cummings, Amber Fithian, Jamie Renninger, Diana Mackay, Jeremy Johnson, Andrew Marrone, Katie Perasso, Carl Wedekind, Terry O'Connell, William Cook, Joshua A. DeJong, Annette Blandino, Luke Determan, Katie Sheffield, Karol Jones, James Mischel, Greg Burton, Brenda Jean Smith, Brendon William Ruppel, Kristy Welles, Lonny Bartholomew, and Russell Ostlund. Dkt. No. 1-2 at 18–26.

1    records from the Election for a full forensic audit." *Id.*

2        Defendants removed the case to this Court on October 4, 2021. Dkt. No. 1. On October 21,

3    2021, Defendants moved to dismiss individual Plaintiffs' claims under Federal Rules of Civil

4    Procedure 12(b)(1), (2), (4), (5), and (6). Dkt. No. 16 at 3. On October 22, 2021, WEICU filed a

5    motion to remand.[3] Dkt. No. 19. After an attorney entered a notice of appearance on behalf of

6    WEICU, Dkt. No. 14, Defendants moved for summary judgment on WEICU's PRA claim under

7    Federal Rule of Civil Procedure 56. Dkt. No. 26.

8                          **II.    DISCUSSION**

9        Oddly, Defendants removed this action on the basis that "this Court has original

10   jurisdiction over this action under [28 U.S.C.] section 1331," Dkt. No. 22 at 5, and then sought to

11   dismiss the action on the basis that the individual Plaintiffs lack Article III standing to bring their

12   claims, *see* Dkt. No. 16 at 3 n.2, 5–10. As Defendants acknowledged, the only other Plaintiff at

13   that time was WEICU, which purported to assert only a state law claim. Dkt. No. 24 at 2 n.1.

14       28 U.S.C. § 1441 allows a defendant to remove an action filed in state court to federal

15   district court where the federal district court has original jurisdiction. The Ninth Circuit "strictly

16   construe[s] the removal statute against removal jurisdiction," and "[f]ederal jurisdiction must be

17   rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*,

18   980 F.2d 564, 566 (9th Cir. 1992). "The 'strong presumption' against removal jurisdiction means

19   that the defendant always has the burden of establishing that removal is proper." *Id.* Ultimately, if

20   a district court lacks subject matter jurisdiction over a removed action, it usually has the duty to

21   remand it, for "removal is permissible only where original jurisdiction exists at the time of removal

22   or at the time of the entry of final judgment[.]" *Lexecon, Inc. v. Milberg Weiss Bershad Hynes &*

[3] WEICU had previously filed a "Motion to Strike Notice of Removal" seeking remand. Dkt. No. 9. However, because WEICU filed the motion without being represented by counsel, the Court struck the motion. Dkt. No. 13.

1    *Lerach,* 523 U.S. 26, 43 (1998); *see* 28 U.S.C. § 1441(a).

2        Because the Court lacks subject matter jurisdiction over Plaintiffs' federal claims, it cannot

3    exercise supplemental jurisdiction over any of Plaintiffs' state law claims and must either remand

4    or dismiss the entire case. The Court dismisses the Plaintiffs' claims because remand to state court

5    would be futile.

6    **A.    Because the Individual Plaintiffs Do Not Have Article III Standing, this Court Lacks Subject Matter Jurisdiction over Their Claims**

7        At the outset, the Court recognizes that the right at issue in this case—the right to vote and

8    have that vote counted—is "a fundamental matter in a free and democratic society." *Reynolds v.*

9    *Sims*, 377 U.S. 533, 561–62 (1964). But a voter seeking relief in federal court for alleged violations

10   of constitutional rights must have standing to do so, including "a personal stake in the outcome,

11   distinct from a generally available grievance about government." *Gill v. Whitford*, 138 S. Ct. 1916,

12   1923 (2018) (cleaned up). "[A] suit brought by a plaintiff without Article III standing is not a 'case

13   or controversy,' and an Article III federal court therefore lacks subject matter jurisdiction over the

14   suit." *Cetacean Cmty. v. Bush*, 386 F.3d 1169, 1174 (9th Cir. 2004). Article III's "case or

15   controversy" requirement thus obligates federal courts to determine, as an initial matter, whether

16   plaintiffs have standing to bring suit. *Lance v. Coffman*, 549 U.S. 437, 439 (2007).

17       As the party invoking federal jurisdiction, Defendants bear the burden of establishing the

18   existence of a case or controversy under Article III. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

19   561 (1992); *see also Tailford v. Experian Info. Sols., Inc.*, 26 F.4th 1092, 1099 (9th Cir. 2022).

20   "To establish Article III standing, an injury must be 'concrete, particularized, and actual or

21   imminent; fairly traceable to the challenged action; and redressable by a favorable ruling.'"

22   *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (quoting *Monsanto Co. v. Geertson Seed*

23   *Farms*, 561 U.S. 139, 149 (2010)). "For an injury to be 'particularized,' it 'must affect the plaintiff

- 4

in a personal and individual way.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560 n.1). The injury must also be "concrete"; "that is, it must actually exist." *Id.* at 339–40. Because Defendants themselves argue that the individual Plaintiffs lack Article III standing, Dkt. No. 16 at 5–10, they have failed to meet their burden to establish that the Court has subject matter jurisdiction over these claims, *see Britton v. Cnty. of Santa Cruz*, No. 19-CV-04263-LHK, 2020 WL 4197609, at *4 (N.D. Cal. July 22, 2020).

Defendants urge the Court to dismiss Plaintiffs' claims because they raise only generalized grievances and do not identify any particularized individual injury. Dkt. No. 16 at 6–10. These challenges are evaluated under Federal Rule of Civil Procedure 12(b)(1). *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011). Defendants advance both factual and facial challenges to the individual Plaintiffs' standing. In reviewing a factual challenge, the court may consider materials beyond the complaint, *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003), "weigh the evidence[,] and satisfy itself as to the existence of its power to hear the case," *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977). In reviewing a facial attack, however, the inquiry is confined to the allegations in the complaint, and the court assumes all materials allegations in the complaint are true. *Savage*, 343 F.3d at 1039 n.2. However, "[t]his is not to say that plaintiff may rely on a bare legal conclusion to assert injury-in-fact, or engage in an 'ingenious academic exercise in the conceivable' to explain how defendants' actions caused his injury." *Maya*, 658 F.3d at 1068 (internal footnotes omitted) (quoting *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689–90 (1973)).

The Supreme Court has "consistently held that a plaintiff raising only a generally available grievance about government—claiming only harm to his and every citizen's interest in proper application of the Constitution and laws, and seeking relief that no more directly and tangibly benefits him than it does the public at large—does not state an Article III case or controversy."

*Lance*, 549 U.S. at 439 (quoting *Lujan*, 504 U.S. at 573–74 (1992)); *see also Warth v. Seldin*, 422 U.S. 490, 499 (1975) ("[T]he Court has held that when the asserted harm is a 'generalized grievance' shared in substantially equal measure by all or a large class of citizens, that harm alone normally does not warrant exercise of jurisdiction."). Accordingly, and in recognition "that a person's right to vote is 'individual and personal in nature,'" courts have long held that "'voters who allege facts showing *disadvantage to themselves as individuals* have standing to sue' to remedy that disadvantage." *Gill*, 138 S. Ct. at 1929 (emphasis added) (quoting *Reynolds*, 377 U.S. at 561 and *Baker v. Carr*, 369 U.S. 186, 206 (1962)). As Defendants contend, Plaintiffs fail to show such disadvantage and therefore lack Article III standing.

1.   Plaintiffs Do Not Allege that They Suffered Any "Concrete, Particularized, and Actual or Imminent" Injury from the Alleged Misconduct by the Auditor

Plaintiffs' claims each follow a similar pattern: they allege a violation of law, ask the Court to declare the Auditor's duties under the law and enjoin her from violating the law, and then state that they "will suffer irreparable injury" from violations of their constitutional rights:

| Allegation | Requested Declaration/Injunction | "Injury" |
|---|---|---|
| Plaintiffs "are informed and believe" that the Auditor used an uncertified voting system. Dkt. No. 1-2 at 5. | Declare "Plaintiffs' rights and the duties of Auditor as they pertain to the Uncertified Voting System" in the 2020 election and in future elections, and restrain the Auditor from using any uncertified voting system. *Id.* at 6–7. | "Plaintiffs will suffer irreparable injury in that their fundamental rights under the Washington State Constitution and/or United States Constitution . . . will be further violated." *Id.* at 7. |
| Plaintiffs "are informed and believe" that the Auditor "allow[ed] and/or facilitat[ed] electronic manipulation of the voting results from the [2020] Election," and that "a portion of the state-wide vote flipping, additions and/or deletions occurred in the County's Election overseen by Auditor." *Id.* at 8. | Declare the "Plaintiffs' rights and the duties of Auditor with regard to the alleged vote flipping, additions and/or deletions before, during and/or after the [2020] Election," and restrain the Auditor from "allowing and/or facilitating electronic manipulation of the voting results from the [2020] Election." *Id.* at 8–9. | Same as above. *See id.* at 9. |

| Allegation | Requested Declaration/Injunction | "Injury" |
|---|---|---|
| Plaintiffs "are informed and believe" that the Auditor allowed or facilitated (1) maintenance of a record of County voters' party preference and (2) identification of County voters' ballots cast in the 2020 election by party preference. *Id.* at 9. | Declare the "Plaintiffs' rights and the duties of Auditor with regard to the alleged party preference conduct," and restrain the Auditor from "allowing and/or facilitating party preference tracking and/or ballot identification." *Id.* at 10. | Same as above. *See id.* at 10. |
| Auditor's conduct violated the United States Constitution, including the Fourteenth Amendment. *Id.* at 14–15. | Declare "Plaintiffs' rights and the duties of Auditor, as they pertain to the [2020] Election and future elections in the County," and restrain the Auditor from using an uncertified voting system, allowing or facilitating vote flipping, additions and/or deletions, and/or allowing or facilitating party preference tracking and/or ballot identification. *Id.* at 15–16. | Same as above, *id.* at 15, and:<br><br>"Because Auditor failed to follow state and federal law," County voters "were denied their fundamental right of suffrage without due process of law" and "had the value of their votes diluted, and the will of said voters denied, without due process of law," and County voters' ballots "were not treated equally nor given equal levels of protection under the law." *Id.* at 14–15. |

In none of these allegations do Plaintiffs claim that they suffered any "concrete, particularized, and actual or imminent" injury from the Auditor's alleged misconduct. Although Plaintiffs do not explain their theory of vote dilution, it appears to be based on general allegations of election irregularities that affected the votes of all "qualified electors" in the County. *See* Dkt. No. 1-2 at 14 (because "Auditor failed to follow state and federal law," "[q]ualified electors who voted similarly had the value of their votes diluted"). "As courts have routinely explained, vote dilution is a very specific claim that involves votes being weighed differently and cannot be used generally to allege voter fraud." *Bowyer v. Ducey*, 506 F. Supp. 3d 699, 711 (D. Ariz. 2020). *See also Feehan v. Wis. Elections Comm'n*, 506 F. Supp. 3d 596, 609 (E.D. Wis. Dec. 9, 2020) (plaintiff lacked standing where his "alleged injuries are injuries that any Wisconsin voter suffers if the Wisconsin election process were . . . so riddled with fraud, illegality, and statistical impossibility" that its results could not be certified); *Martel v. Condos*, 487 F. Supp. 3d 247, 253 (D. Vt. 2020) ("A vote cast by fraud or mailed in by the wrong person through mistake has a

mathematical impact on the final tally and thus on the proportional effect of every vote, but no single voter is specifically disadvantaged."); *Paher v. Cegavske*, 457 F. Supp. 3d 919, 926 (D. Nev. 2020) ("Plaintiffs' purported injury of having their votes diluted due to ostensible election fraud may be conceivably raised by any Nevada voter."); *Am. C.R. Union v. Martinez-Rivera*, No. 2:14-CV-026-AM-CW, 2015 WL 13650011, at *7 (W.D. Tex. Feb. 23, 2015) (speculative complaints of "potential vote dilution are nothing but a generalized grievance about government, complaining that an official should be required to follow the law."). While Plaintiffs speculate that the Auditor tracked or identified ballots by "party preference," Dkt. No. 1-2 at 9, they do not suggest that any votes were weighed differently, including their own. Thus, although allegations of vote dilution may create standing in some circumstances, they do not do so here.

Similarly, Plaintiffs never assert that they were personally harmed by any of Defendants' alleged conduct with respect to the use of an uncertified voting system, the manipulation of voting results, or the tracking of party preference. *See generally* Dkt. No. 1-2.

To the extent Plaintiffs argue more broadly that they maintain an interest in government officials conducting an election in conformity with the Constitution, "they merely assert a 'generalized grievance' stemming from an attempt to have the Government act in accordance with their view of the law." *Wis. Voters All. v. Pence*, 514 F. Supp. 3d 117, 120 (D.D.C. 2021). *See also Lujan*, 504 U.S. at 576 ("the public interest in proper administration of the laws" is insufficient to create Article III standing, regardless of "the source of the asserted right"); *Wood v. Raffensperger*, 981 F.3d 1307, 1314 (11th Cir. 2020) ("An injury to the right 'to require that the government be administered according to the law' is a generalized grievance." (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1205–06 (11th Cir. 1989))), *cert. denied*, 141 S. Ct. 1379 (2021); *Ickes v. Whitmer*, No. 1:22-CV-817, 2022 WL 4103030, at *3 (W.D. Mich. Sept. 8, 2022) (finding that "Plaintiffs likely do not have standing to raise [their] concern about [allegedly uncertified] machines used in

the November 2022 election or the possible destruction of records" because they "have only a generalized grievance that would be common among all people who cast a vote in the November 2022 election and not a particularized, individual injury").

Plaintiffs also lack standing to assert their claims under 42 U.S.C. §§ 1983 and 1988 because those claims are derivative of their other claims, which the Court has already found they lack standing to assert. Sections 1983 and 1988 do not create standing where it is otherwise lacking. *See Save Our Valley v. Sound Transit*, 335 F.3d 932, 936 (9th Cir. 2003) ("One cannot go into court and claim a 'violation of § 1983'—for § 1983 by itself does not protect anyone against anything." (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002))); 42 U.S.C. § 1988 (granting discretion to accord attorney's fees to the "prevailing party" in a suit under § 1983).[4]

In its opposition, WEICU[5] fails to identify a basis for standing. *See* Dkt. No. 23 at 3–23. Some of Plaintiffs' arguments are aimed at showing that they have standing under the relevant state statutes, *id.* at 3–8, but this does not establish Article III standing. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 804 (1985) ("Standing to sue in any Article III court is, of course, a federal question which does not depend on the party's prior standing in state court.").

---

[4] The Court does not consider Defendants' argument that Plaintiffs failed to serve Auditor Garth Fell in his personal capacity because the Court has already found that it lacks subject matter jurisdiction to hear the claims naming him as a defendant. *See* Dkt. No. 16 at 3–5; *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 431 (2007) ("[A] federal court has leeway to choose among threshold grounds for denying audience to a case on the merits." (cleaned up)). Further, because the Court finds in favor of Defendants on their facial challenges to Plaintiffs' standing, it does not address their factual challenges.

[5] Twenty-five of the individual Plaintiffs (Arthur Coday, Jr., Thomas J. Prettyman, Diane DeJong, Rita Beitz, Diana Barker, Roy Fuller, Mary Lou Burns, Bob Kaldor, Jane Maclin, James Maclin, Randy Tendering, John Beitz, Melissa Eller, Lisa Cummings, Jamie Renninger, Jeremy Johnson, Terry O'Connell, William Cook, Joshua A. DeJong, Annette Blandino, Luke Determan, Karol Jones, Kristy Welles, Lonny Bartholomew, and Russell Ostlund) joined WEICU's opposition. Dkt. No. 23-2 at 2–6. Eleven individual Plaintiffs (Susan Mischel, Amber Fithian, Diana Mackay, Andrew Marrone, Katie Perasso, Carl Wedekind, Katie Sheffield, James Mischel, Greg Burton, Brenda Jean Smith, and Brendon William Ruppel) did not respond or join WEICU's opposition. For the same reason explained above, *supra* note 4, the Court does not address Defendants' argument that these Plaintiffs' failure to respond is an admission that the motion has merit. *See* Dkt. No. 24 at 2 n.1.

Plaintiffs further argue that they have standing to bring their claim for an uncertified voting system because Defendants "used a system that never legally tabulated their ballot[s]," thus denying them their fundamental right to vote. Dkt. No. 23 at 9–11. However, Plaintiffs' allegations that Defendants used an uncertified voting system are generalized grievances for all the reasons explained above: Plaintiffs' grievances would be common among all Snohomish County voters. *See Ickes*, 2022 WL 4103030, at *2–3 (plaintiffs had "only a generalized grievance that would be common among all people who cast a vote in the November 2022 election" where they alleged that "no county in Michigan used a properly certified electronic voting system"); *Feehan*, 506 F. Supp. 3d at 608–09 (the "possibility of unlawful or invalid ballots being counted" is insufficient to confer standing). Finally, Plaintiffs attempt to distinguish the cases Defendants have cited in support of their standing argument, Dkt. No. 23 at 12–14, but their efforts are unavailing. These cases support the long-established principle that plaintiffs lack Article III standing—and have asserted merely generalized grievances—where their alleged injuries are ones that could conceivably be raised by any other voter.

Because Plaintiffs have asserted only generalized grievances, the Court finds that Plaintiffs lack Article III standing to assert their federal claims.

2.      The Court Lacks Supplemental Jurisdiction over Plaintiffs' State Law Claims

WEICU and Defendants dispute whether the Court may exercise supplemental jurisdiction over Plaintiffs' state law claims. Dkt. No. 22 at 7–12; Dkt. No. 25 at 5–6.

Under 28 U.S.C. § 1367(a), a district court "shall have" supplemental jurisdiction over claims that form part of the "same case or controversy" as claims within the court's original jurisdiction. However, "if the court dismisses [all federal claims] for lack of subject matter jurisdiction, it has no discretion" under Section 1367 to adjudicate the plaintiff's state-law claims "and must dismiss all claims." *Herman Fam. Revocable Tr. v. Teddy Bear*, 254 F.3d 802, 806 (9th

Cir. 2001); *see also Scott v. Pasadena Unified Sch. Dist.*, 306 F.3d 646, 664 (9th Cir. 2002) ("[W]ith the dismissal of [plaintiff's] federal constitutional claim for lack of standing, we have no authority to retain jurisdiction over [his] state law claims.").

Because the Court does not have subject matter jurisdiction over Plaintiffs' federal claims due to their lack of Article III standing, it has no discretion under 28 U.S.C. § 1367(c) to adjudicate the remaining claims. Without subject matter jurisdiction, the Court is left to either dismiss or remand Plaintiffs' claims. *See Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196–98 (9th Cir. 2016).

**B.     Plaintiffs' Claims Are Dismissed Because Remand Would Be Futile**

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction" over a case that has been removed from state court, "the case shall be remanded." 28 U.S.C. § 1447(c); *see also Polo*, 833 F.3d at 1196 (a district court lacking subject matter jurisdiction "generally *must* remand the case to state court, rather than dismiss it" (emphasis in original)). Usually, "[r]emand is the correct remedy because a failure of federal subject-matter jurisdiction means only that the *federal* courts have no power to adjudicate the matter. State courts are not bound by the constraints of Article III." *Polo*, 833 F.3d at 1196 (emphasis in original). However, the Ninth Circuit has held that a district court may dismiss a case rather than remand it to state court where it is "certain that a remand to state court would be futile." *Bell v. City of Kellogg*, 922 F.2d 1418, 1425 (9th Cir. 1991). Because remand of Plaintiffs' claims to state court is certain to be futile, the Court dismisses the claims instead of remanding them.

1.     The Futility Exception

There is some doubt about the continued vitality of the futility exception. A few months after the Ninth Circuit decided *Bell*, the Supreme Court issued an opinion in which it noted that "the literal words of § 1447(c)" give "no discretion to dismiss rather than remand an action" over

which a district court lacks original jurisdiction. *Int'l Primate Prot. League v. Administrators of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991) (quoting *Maine Ass'n of Interdependent Neighborhoods v. Comm'r, Maine Dep't of Hum. Servs.*, 876 F.2d 1051, 1054 (1st Cir. 1989)). Although the Supreme Court "did not reject the futility doctrine outright," the Ninth Circuit has expressed concern that "[i]n the wake of *International Primate*, a number of other circuits have expressly rejected the futility doctrine," and it "may no longer be good law." *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1197–98 (9th Cir. 2016) (citing *Hill v. Vanderbilt Capital Advisors, LLC*, 702 F.3d 1220, 1225–26 (10th Cir. 2012) (collecting cases)). Despite this lingering doubt, the Ninth Circuit in *Polo* declined to overrule *Bell*: "*Polo* has not argued that *Bell* is no longer controlling law, and we decline to so hold *sua sponte*." *Id.* at 1198. The Ninth Circuit reiterated that, under the *Bell* rule, a district court may dismiss a case "only when the eventual outcome of [the] case after remand is so clear as to be foreordained[.]" *Id.*

Since the 2016 decision in *Polo*, some district courts in the Ninth Circuit have concluded that the futility exception is now merely "[h]istorical[]." *Morgan v. Bank of Am., N.A.*, No. 2:20-CV-00157-SAB, 2020 WL 3979660, at *2 (E.D. Wash. July 14, 2020); *see also Washington v. City of Sunnyside*, No. 1:20-CV-3018-RMP, 2021 WL 4197368, at *2 (E.D. Wash. Aug. 26, 2021); *Mendoza v. Aldi Inc.*, No. 219CV06870ODWJEMX, 2019 WL 7284940, at *2 (C.D. Cal. Dec. 27, 2019); *Alvarado v. Univ. of S. California*, No. CV 17-3671-GW(AJWX), 2017 WL 8116092, at *5 (C.D. Cal. Sept. 21, 2017). However, other district courts have continued to apply the exception. *See, e.g.*, *Strojnik v. Super 8 Worldwide Inc.*, No. C21-0927-PHX-DWL, 2022 WL 613227, at *3 (D. Ariz. Mar. 2, 2022); *Ross v. Hawaii Nurses' Ass'n Off. & Pro. Emps. Int'l Union Loc. 50*, 290 F. Supp. 3d 1136, 1148 (D. Haw. 2018); *Advocs. for Individuals With Disabilities LLC v. MidFirst Bank*, 279 F. Supp. 3d 891, 895 & n.1 (D. Ariz. 2017).

There is good reason to embrace the concerns expressed in *Polo* about the validity of the futility doctrine: as the Supreme Court and other courts have noted, it appears to contradict the mandatory language of 28 U.S.C. § 1447(c). *Int'l Primate*, 500 U.S. at 89; *Esteves v. SunTrust Banks, Inc.*, 615 F. App'x 632, 636–37 (11th Cir. 2015) ("The Supreme Court has noted that the literal words of § 1447(c) give district courts no discretion to dismiss rather than remand an action when subject-matter jurisdiction is lacking . . . Whether the matter is justiciable under state law is a matter for the state court to decide.") (cleaned up); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1033 (8th Cir. 2014) ("If . . . the case did not originate in federal court but was removed there by the defendants, the federal court *must* remand the case to the state court from whence it came." (emphasis in original)); *Fent v. Okla. Water Res. Bd.*, 235 F.3d 553, 557–58 (10th Cir. 2000) ("The plain language of § 1447(c) gives no discretion to dismiss rather than remand an action removed from state court over which the court lacks subject-matter jurisdiction."); *Bromwell v. Michigan Mut. Ins. Co.*, 115 F.3d 208, 214 (3d Cir. 1997) ("In light of the express language of § 1447(c) and the Supreme Court's reasoning in *International Primate,* we hold that when a federal court has no jurisdiction of a case removed from a state court, it must remand and not dismiss on the ground of futility.").[6]

---

[6] It also seems counter to the long-established principle that "[w]ithout jurisdiction the court cannot proceed at all in any cause" for a court without jurisdiction to effectively decide the merits of a case. *Ex parte McCardle*, 74 U.S. (7 Wall.) 506, 514 (1868). This is especially true where defendants have engaged in the "dubious strategy" of removing the case on the basis that the federal court "has federal question jurisdiction pursuant to 28 U.S.C. § 1331," Dkt. No. 1 at 2, only to then move to dismiss on the basis that the plaintiffs' claims fail to establish Article III standing, Dkt. No. 16 at 5. *See Collier v. SP Plus Corp.*, 889 F.3d 894, 895–97 (7th Cir. 2018) (noting that defendants' "dubious strategy" of removing on the basis that "the district court had federal-question jurisdiction" and then "mov[ing] to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(1) for lack of Article III standing" "resulted in a significant waste of federal judicial resources, much of which was avoidable."); *Perna v. Health One Credit Union*, 983 F.3d 258, 273 (6th Cir. 2020) ("there is something 'anomalous' about the [defendant] removing this suit to federal court on the ground that the court had jurisdiction and then arguing to the very same court that it lacks jurisdiction"); *Zanotti v. Invention Submission Corp.*, No. 18-CV-5893 (NSR), 2020 WL 2857304, at *11 (S.D.N.Y. June 2, 2020) ("[I]f InventHelp Defendants were truly concerned about expense and the preservation of judicial resources, their litigation strategy would not have involved invoking this Court's jurisdiction only to immediately challenge it on standing grounds.").

- 13

However, the Ninth Circuit has upheld application of the futility exception in several cases since *Bell. See, e.g.*, *Strojnik v. Driftwood Hosp. Mgmt., LLC*, No. 21-16060, 2022 WL 1642234, at *1 (9th Cir. May 24, 2022) ("The district court properly denied [plaintiff's] motion to remand the actions to state court because remand would have been futile."); *Glob. Rescue Jets, LLC v. Kaiser Found. Health Plan, Inc.*, 30 F.4th 905, 920 n.6 (9th Cir. 2022) ("A narrow 'futility' exception to this general rule permits the district court to dismiss an action rather than remand it if there is 'absolute certainty' that the state court would dismiss the action following remand."); *Marshall v. Motel 6 Operating LP*, 825 F. App'x 527, 528 (9th Cir. 2020) ("[W]e have recognized a futility exception to the remand mandate in § 1447(c)[.]"); *Rodriguez v. U.S. Healthworks, Inc.*, 813 F. App'x 315, 316 (9th Cir. 2020) (noting that the futility doctrine applies "when a district court has 'absolute certainty' that a state court would 'simply dismiss the action on remand'" (quoting *Polo*, 833 F.3d at 1198)). Because the Ninth Circuit explicitly declined to overrule *Bell* in *Polo* and has continued to apply the doctrine after *Polo*, the Court concludes that *Bell* remains binding precedent and therefore addresses whether it is certain that remand would be futile.

## 2. Dismissal of Plaintiffs' Claims on Remand Is Effectively "Foreordained"

In this case, dismissal of Plaintiffs' claims upon remand is effectively "foreordained." *Polo*, 833 F.3d at 1198. This action is one of eight nearly identical actions originally filed in state court in counties across Washington, six of which were removed to this Court. *See supra* at 2 n.2 (listing removed cases); *see also* Dkt. No. 42 at 16–32, 52–70. Both of the cases that remained in state courts have already been dismissed, although appeals are currently pending. *See Wash. Election Integrity Coal. United v. Beaton*, No. 21-2-50572-11 (Wash. Sup. Ct. Dec. 13, 2021), *appeal filed sub nom. Wash. Election Integrity Coal. United v. Franklin Cnty.*, No. 391574 (Wash. Ct. App. Div. III Sept. 6, 2022); *Wash. Election Integrity Coal. United v. Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct. Mar. 28, 2022), *appeal filed sub nom. Schulz v. Schumacher*, No. 388841 (Wash.

Ct. App. Div. III May 4, 2022). In *Schumacher*, the court concluded that "Plaintiffs' election claims are untimely and barred by statute and the equitable doctrine of laches, that the respective Plaintiffs each lack standing to bring the election claims alleged, . . . that Plaintiffs fail to state an election claim upon which relief may be granted," and "that Plaintiffs fail to state a claim upon which relief may be granted under the Public Records Act." No. 21-2-00042-22, slip. op. at 2 (Mar. 28, 2022). The court further found that "Plaintiffs' claims are frivolous and advanced without reasonable cause, are not well grounded in fact or warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law or the establishment of new law, and were interposed for improper purposes." *Id.* Similarly, in *Beaton*, the court found that, "for the reasons stated in Defendants' Motion, Plaintiffs lack standing and have failed to state a claim upon which relief can be granted." No. 21-2-50572-11, slip. op. at 1 (Dec. 13, 2021).

The claims in the complaints that were dismissed in *Schumacher* and *Beaton* are nearly identical to the claims in this case: *Beaton* contained a nearly identical claim for use of an uncertified voting system, and *Beaton* and *Schumacher* both included nearly identical claims of allowing or facilitating vote flipping, additions and/or deletions, party preference tracking, and federal and state constitutional violations premised on those claims, as well as PRA claims. *See generally* Second Amended Verified Complaint, *Schumacher*, No. 21-2-00042-22 (Wash. Sup. Ct. Jan. 18, 2022) ("*Schumacher* Complaint"); First Amended Verified Complaint, *Beaton*, No. 21-2-50572-11 (Wash. Sup. Ct. Oct. 11, 2021) ("*Beaton* Complaint"). Substantial portions of all three complaints appear to be copied verbatim from one another. *See generally Schumacher* Complaint; *Beaton* Complaint; Dkt. No. 1-2.

Although there are some differences between the allegations in each of these cases, those differences are minor and could not plausibly justify a different outcome. For example, some of the allegations in *Beaton* and *Schumacher* are absent from the complaint in this case: in *Beaton*,

plaintiffs included in their allegations of vote manipulation that "for several weeks during the Election, Auditor experienced problems with the signature verification system used to verify ballot envelope signatures, including without limitation, lost access to the state-supplied signature database." *Beaton* Complaint at 7; *see also Schumacher* Complaint at 5 (nearly identical allegation in *Schumacher* amended complaint). In *Schumacher*, plaintiffs also alleged that "the Auditor's office experienced a ransomware attack that, among other things, blocked access to County computers and election systems which continued to be shut down through certification of the Election." *Schumacher* Complaint at 4–5. These allegations are made in *addition* to all the same allegations made in the complaint in this case, and for purposes of remand futility amount to an inconsequential difference.

In addition to the other grounds for dismissal, all of Plaintiffs' state law claims other than the PRA claim share a common defect: they depend upon Section 29A.68.013 of the Revised Code of Washington ("Section 13") as a vehicle for Plaintiffs' requested relief. Dkt. No. 1-2 at 5, 7, 9. As relevant here, Section 13 states that a judge "shall, by order, require any person charged with error, wrongful act, or neglect to forthwith correct the error, desist from the wrongful act, or perform the duty and to do as the court orders" where an affidavit of an elector demonstrates that "[a]n error or omission has occurred or is about to occur in the official certification of any . . . election," or that certain wrongful acts have been performed by, or a neglect of duty has occurred on the part of, an election officer. Wash. Rev. Code § 29A.68.013. Importantly, Section 13 sets a strict time limit: the elector's affidavit "shall be filed with the appropriate court no later than ten days following the official certification of the . . . election." *Id.* The complaint was filed on September 16, 2021, well past ten days after the certification of the 2020 general election. Dkt. No. 1-2 at 2.

Plaintiffs do not allege that they complied with the time limit for filing actions under Section 13. Rather, they argue that the 10-day limitations period does not apply to their claims because they "are not seeking de-certification of the Election." Dkt. No. 1-2 at 5. But the plain language of Section 13 makes no exceptions, nor is relief under the section limited to de-certification of the election. *See* Wash. Rev. Code § 29A.68.013. Plaintiffs expressly seek injunctive relief under Section 13, and they are therefore required to satisfy Section 13's requirements before they may obtain any such relief. *See In re Feb. 14, 2017, Special Election on Moses Lake Sch. Dist. #161 Proposition 1*, 413 P.3d 577, 580 (Wash. Ct. App. 2018) (the statute "demands that an election contest be filed within ten days of the election's certification"); *see also, e.g.*, *Reid v. Dalton*, 100 P.3d 349, 354 (Wash. Ct. App. 2004) ("Filing an action for declaratory judgment, rather than one for direct relief, d[oes] not avoid the statute of limitation" for an election challenge; "[w]here . . . a special statute of limitation applies, even a declaratory judgment action is subject to the same statutory limitation."). There is no colorable argument that Plaintiffs have brought or can bring valid claims under Section 13.[7]

### 3.   The Dismissal of WEICU's PRA Claim Is Also "Foreordained"

WEICU's PRA claim is also doomed under Washington law because Washington courts have already decisively rejected its legal theory. WEICU seeks to "compel Defendants to provide access to public records from the Election for a full forensic audit," and asserts that a records request it made under the PRA in August 2021 for "original ballots, ballot images, spoiled ballots, adjudication records, ballot envelopes, and returned ballots" was wrongly denied on the grounds that the documents being requested were exempt by statute. Dkt. No. 1-2 at 11.

---

[7] Plaintiffs' claims under the Washington State Constitution must also fail because the Washington Supreme Court has "clearly established that the right to contest an election 'rests solely upon, and is limited by, the provisions of the statute relative thereto,'" *Becker v. Cnty. of Pierce*, 890 P.2d 1055, 1058 (Wash. 1995) (quoting *Quigley v. Phelps*, 132 P. 738, 738 (Wash. 1913))—here, Section 13.

Under the PRA, "[a]n agency may lawfully withhold production of records if a specific exemption applies." *White v. Clark Cnty.* (*White I*), 401 P.3d 375, 378 (Wash. Ct. App. 2017). "There are three sources of PRA exemptions: (1) enumerated exemptions contained in the PRA itself, (2) any other statute that exempts or prohibits disclosure, and (3) the Washington Constitution." *Id.* (cleaned up). The "other statute" exemption is found in Section 42.56.070(1) of the Revised Code of Washington: "Each agency, in accordance with published rules, shall make available for public inspection and copying all public records, unless the record falls within the specific exemptions of . . . this chapter, or other statute which exempts or prohibits disclosure of specific information or records." Washington courts have squarely held that both Section 29A.60.110 of the Revised Code of Washington and Section 434-261-045 of the Washington Administrative Code create a statutory exemption for ballots and ballot images under the "other statute" exemption. *White I*, 401 P.3d at 378–80.

Section 434-261-045 of the Washington Administrative Code "unambiguously requires that ballots be kept in secure storage at all times other than during processing, duplication, inspection, and tabulation and states that they can *only* be accessed in accordance with RCW 29A.60.110 and 29A.60.125." *White I*, 401 P.3d at 379–80 (emphasis in original). And Section 29A.60.110 of the Revised Code of Washington "unambiguously requires that tabulated ballots be kept in sealed containers and can be opened by the canvassing board *only* in . . . specified situations": (1) as part of the canvass, (2) to conduct recounts, (3) to conduct a random check under RCW 29A.60.170, (4) to conduct an audit under RCW 29A.60.185, or (5) by order of the superior court in a contest or election dispute. *White I*, 401 P.3d at 379 (emphasis in original); *see also* Wash. Rev. Code § 29A.60.110(2). None of these situations apply here. WEICU lacks the authority to conduct a recount, random check, or audit. And, as discussed above, Plaintiffs failed to file a timely election contest. Wash. Rev. Code § 29A.68.013; *see also Becker*, 890 P.2d at 1058.

Thus, WEICU's arguments are without merit: Section 29A.60.110 of the Revised Code of Washington does not authorize unsealing, and Section 434-261-045 of the Washington Administrative Code—which provides procedures for handling damaged ballots—expressly states that "ballots must be sealed in secure storage at all times, except during duplication, inspection by the canvassing board, tabulation, or to conduct an audit under RCW 29A.60.185." All of the records WEICU requested fall under the "other statute" exemption.

WEICU makes several other arguments in support of its PRA claim in the complaint, but those arguments have already been rejected by Washington courts or are clearly contrary to existing law. First, WEICU relies on its own interpretations of the Washington Constitution to argue that ballots should be disclosed, Dkt. No. 1-2 at 11–12, but Washington courts have already rejected those interpretations and have also held that Washington's election statutes provide the sole means of contesting an election. *See Becker*, 890 P.2d at 1058 (holding that the state constitution does not create an independent right of action, and the election statutes are the only means of contesting an election). Second, WEICU argues that the Washington Constitution "guarantees secrecy <u>only</u> in the preparation and deposit of ballots, and says nothing about secrecy following an election[.]" Dkt. No. 1-2 at 11 (emphasis in original). But under the PRA, "tabulated ballots are exempt in their entirety from disclosure." *White I*, 401 P.3d at 380. Third, WEICU argues that the Washington Constitution "does not prohibit public access to unidentifiable ballots after an election." Dkt. No. 1-2 at 12. Courts have rejected this proposition, too: "RCW 29A.60.110 and WAC 434-261-045 provide categorical exemptions, not conditional ones," and "no amount of redaction will transform the ballots into some other type of record." *White I*, 401 P.3d at 380; *see also White v. Skagit Cnty.* (*White II*), 355 P.3d 1178, 1185 (Wash. Ct. App. 2015) ("The constitutional mandate of *absolute* secrecy could not be adequately accomplished by just having government employees use their own discretion as to what is identifying on a ballot and what

needs redaction." (emphasis in original)). Fourth, WEICU cites various Washington statutes and regulations permitting access to ballots or ballot images, Dkt. No. 1-2 at 12, but those statutes and regulations only permit access under a limited set of specified circumstances that do not exist here, as already explained. Finally, WEICU asserts that "[n]umerous courts outside of Washington State have ruled that ballots are public records and subject to inspection," *id.*, but Washington courts have found such cases unpersuasive because "they were decided within different statutory frameworks and under different factual circumstances," *White II*, 355 P.3d at 1184. And these courts' interpretation of the statutory framework at issue here weighs decisively against WEICU's claims. For these reasons, it is a "foreordained" conclusion that WEICU's PRA claim would be dismissed on remand, as the virtually identical claims in *Schumacher* and *Beaton* already have been.

In sum, remand of Plaintiffs' claims would be futile: dismissal of the claims is "foreordained" because they are clearly foreclosed by Washington law. *Polo*, 833 F.3d at 1198. Finding that remand of the PRA claim would be futile, the Court instead dismisses the claim and denies Defendants' motion for summary judgment on that claim, Dkt. No. 26, as moot.

## IV.    CONCLUSION

For the reasons stated above, the Court DENIES WEICU's motion to remand, Dkt. No. 19, and GRANTS Defendants' motion to dismiss Plaintiffs' claims, Dkt. No. 16, without prejudice. *See Collier*, 889 F.3d at 897 (a suit dismissed for lack of jurisdiction cannot also be dismissed with prejudice). The Court further DISMISSES WEICU's PRA claim and DENIES Defendants' motion for summary judgment on that claim, Dkt. No. 26, as moot. The Washington State Democratic Central Committee's Motion to Intervene, Dkt. No. 4, is also DENIED as moot.

Dated this 30th day of September, 2022.

Lauren King
United States District Judge